Jeffrey A. Charlston (State Bar No. 65427)
    E-Mail: jcharlston@crwllp.com;
    Telephone: (310) 551-7010
Bruce T. Smyth (State Bar No. 089171)
    E-Mail: bsmyth@crwllp.com
    Telephone: (310) 551-7055
CHARLSTON, REVICH & WOLLITZ LLP
1925 Century Park East, Suite 1250
Los Angeles, California 90067
Facsimile:  (310) 203-9321

Attorneys for Plaintiff
Westport Insurance Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, a Missouri corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>LAW OFFICE OF MARILYN THOMASSEN, PC, MARILYN THOMASSEN, BING WU, LI JIAN, PING YIN, LI PING FANG, XI ZHONG ZHANG, LI HUA LI, XI ZHOU, MENGYING YU, WU HUA YUAN, JIAN CHANG WU, YING ZHU, JIA LI REN, WEI XIN TANG, WEI HONG CHEN, YANQIONG LI, XIANG MIN GONG, HUI SHE, XIAO HONG LIU, JIAN HONG FEI, BING YANG, GANG LI, and MING XU,<br><br>                    Defendants. | Case No.<br><br><br>COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF |

Comes Now Plaintiff, Westport Insurance Corporation ("Westport"), by its

undersigned attorneys, and for its Complaint for Rescission and Declaratory Relief

against Law Offices of Marilyn Thomassen and Associates, PC ("LOMT"),

Marilyn Thomassen ("Thomassen"), Bing Wu, Li Jian, Ping Yin, Li Ping Fang, Xi

1

Zhong Zhang, Li Hua Li, Xi Zhou, Mengying Yu, Wu Hua Yuan, Jian Chang Wu, Ying Zhu, Jia Li Ren, Wei Xin Tang, Wei Hong Chen, Yanqiong Li, Xiang Min Gong, Hui She, Xiao Hong Liu, Jian Hong Fei, Bing Yang, Gang Li, and Ming Xu[1], alleges as follows:

## I. THE NATURE OF THIS ACTION

1.      Pursuant to 28 U.S.C. Section 2201, Westport seeks a judicial determination that it is entitled to rescind, and for a judgment declaring void *ab initio,* two Lawyers Professional Liability policies issued to LOMT for the periods May 11, 2016 to May 11, 2017 (the "2016 Policy") and May 11, 2017 to May 11, 2018 (the "2017 Policy") (collectively, the "Policies"). Westport underwrote and issued the Policies in reliance upon an insurance application and Warranty Statement submitted to it by LOMT and Thomassen that were materially false. Had LOMT and Thomassen accurately completed the insurance application and Warranty Statement, then Westport would have not issued the Policies or would have issued the Policies with materially different terms and at a higher premium. Westport therefore seeks confirmation of its right to rescind the Policies and a judicial determination  that the Policies are void *ab initio* and of no force and effect.  Westport also seeks reimbursement of claims expenses incurred by it in

_____

[1] The Chinese defendants are collectively referred to herein as "the Claimants" Westport does not seek any relief against Claimants other than to bind them to any judicial determination made herein against LOMT and Thomassen.

1  defending the underlying lawsuits identified below.

2      2.      Westport also brings this action, in the alternative, for declaratory

3  relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and

4  2202, and Rule 57 of the Federal Rules of Civil Procedure.  Westport seeks a

5  determination of the parties' rights and obligations under the Policies in connection

6  with two underlying lawsuits filed by the Claimants against LOMT and Thomassen

7  in the Superior Court of California, which Westport is defending for LOMT and

8  Thomassen under a reservation of rights.  Disputes exist between Westport, LOMT

9  and Thomassen regarding whether Westport has a duty to defend them for the

10  claims asserted in the underlying lawsuits.  Westport therefore seeks a declaration

11  that it has no duty to defend (and therefore no duty to indemnify) LOMT and

12  Thomassen in the underlying lawsuits.

13

14      **II.  <u>PARTIES</u>**

15

16      3.      Plaintiff Westport Insurance Corporation is a Missouri Corporation

17  with its principal place of business at 5200 Metcalf Avenue, Overland Park,

18  Kansas 66202.  Westport is a citizen of the States of Missouri and Kansas.

19      4.      Defendant Law Office of Marilyn Thomassen, PC is a California

20  professional corporation with its headquarters and principal place of business at

21  250 Fischer Avenue, Costa Mesa, Orange County, California.  LOMT is citizen of

22  the State of California.

23      5.      Defendant Marilyn Thomassen is the shareholder of LOMT and is

24  domiciled in the State of California, and engaged in the conduct pertinent to this

25  case at the offices of LOMT at 250 Fischer Avenue, Costa Mesa, Orange County,

26  California.  Thomassen is citizen of the State of California.

27      6.      Defendant Bing Wu is an individual currently residing in the State of

28  Rhode Island and is a citizen of the People's Republic of China.

7.      Defendant Li Jian is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

8.      Defendant Ping Yin is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

9.      Defendant Li Ping Fang is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

10.     Defendant Xi Zhong Zhang is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

11.     Defendant Li Hua Li is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

12.     Defendant Xi Zhou is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

13.     Defendant Mengying Yu is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

14.     Defendant Wu Hua Yuan is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

15.     Defendant Jian Chang Wu is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

16.     Defendant Ying Zhu is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

17.     Defendant Jia Li Ren is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

18.     Defendant Wei Xin Tang is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

19.     Defendant Wei Hong Chen is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

20.     Defendant Yanqiong Li is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

{00146518.DOCX }

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

21.    Defendant Xiang Min Gong is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

22.    Defendant Hui She is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

23.    Defendant Xiao Hong Liu is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

24.    Defendant Jian Hong Fei is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

25.    Defendant Bing Yang is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

26.    Defendant Gang Li is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

27.    Defendant Ming Xu is an individual residing in the People's Republic of China and is a Citizen of the People's Republic of China.

## III.  JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because, as alleged in paragraphs 3 through 27, this action is between citizens of different states and non-resident aliens and complete diversity exists. In addition, an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201 with respect to the procurement of the Policies and their applicability to the underlying lawsuits.

29.    Additionally, because the Policies include limits of $250,000 each claim and $500,000 in the aggregate, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

30.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because LOMT and Thomassen reside within the boundaries of the Central District of

California, the Policies were delivered to LOMT within the boundaries of the Central District of California, and the underlying lawsuits and events giving rise to the underlying lawsuits occurred within the Central District of California.

## IV.     THE 2016 INSURANCE POLICY APPLICATION AND 2017 WARRANTY STATEMENT

31.     As part of the process for determining whether to provide insurance to LOMT and Thomassen for the 2016 Policy, including the amount of insurance and the terms, conditions, exclusions, and limitations of the insurance and premium charged, Westport required LOMT to complete a Lawyers Professional Liability Insurance Application ("Application"), Supplemental Area of Practice Question for Lawyers ("Practice Questions"), and an Individual Lawyer Supplement ("Lawyer Supplement"), true and correct copies of which are attached hereto as Exhibit "A" and incorporated herein by this reference.

32.     In the Application, LOMT represented that neither the firm nor Thomassen acted as an employee of any organization other than the applicant law firm (LOMT), denied that it (or Thomassen) acted as a director, officer, partner, or trustee, or exercised a form of managerial or fiduciary control over any for-profit business enterprise other than the applicant law firm, and denied that it (or Thomassen) owned, managed, or had financial control over or equity in any for-profit business other than the applicant law firm. *See* Ex. A, Application, Section I, Question 10.

33.     LOMT and Thomassen denied that any claims, suits, or demands had been made during the previous  five years against LOMT, a predecessor firm, or any lawyer proposed for insurance.  *Id*. at Section III, Question 10.

34.     LOMT and Thomassen also denied knowledge of any fact or circumstance, act, error, omission or personal injury, which might be expected to

be the basis of a claim or suit for professional liability insurance.  *Id*. at Section III, Question 11.

35.    LOMT and Thomassen stated that LOMT had less than four non-lawyer personnel, and that Thomassen was the only lawyer working in the firm. There were  no "of counsel" or independent contractor attorneys disclosed or identified.  *Id*. at Section III, Question 12 and Individual Lawyers Supplement.

36.    Thomassen also denied having any office locations other than or in addition to  the location at 250 Fischer Avenue, Costa Mesa, Orange County, California.  *Id*. at Section I, Firm Information.

37.    The Application also provides as follows:

> The undersigned understands and accepts that any policy issued will provide coverage on a claims-made and reported basis for only those claims that are made against the insured and reported while the policy is in force and that coverage ceases with the termination of the policy. All claims will be excluded that result from any acts, circumstances or situations known prior to the inception of coverage being applied for, that could reasonably be expected to result in a claim.

> The undersigned represents and warrants that the statements set forth herein are true, complete and accurate and that there has been no attempt at suppression or misstatement of any material facts known, or which should be known, and agrees that this application shall become the basis of any coverage that may be issued by the Company.

38.    The Application also contains the following relevant Fraud Warning:

> Any person who knowingly files an application for insurance or

statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act which is a crime and also punishable by criminal and/or civil penalties in certain jurisdictions.

39.     Thomassen executed the Application, Practice Questions and Lawyer Supplement on April 28, 2016.  *See* Ex. A.

40.     Westport, in turn, relied on the Application, Practice Questions and Lawyer Supplement in issuing the 2016 Policy, including the amount of insurance and the terms, conditions, exclusions, and limitations of the insurance and premium charged.

41.     In order to bind coverage for the 2017 Policy, LOMT and Thomassen executed a Warranty Statement dated April 26, 2017, a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by this reference.

42.     Westport relied on the Warranty Statement and Application, Practice Questions, and Lawyer Supplement in issuing the 2017 Policy, including determining the amount of insurance it was willing to afford, the terms, conditions, exclusions, and limitations of the insurance provided, and the premium charged.

43.     The Warranty Statement provides, in relevant part, as follows:

To the best of my knowledge the information given on the application and supplements completed and attached to Policy No. WLA335011310500 is unchanged since the completion.

I, undersigned individual, on behalf of the Named Insured, am aware that my failure to disclose relevant information can impact the insured's ability to make a future claim or claim.  I understand and

accept that the renewal policy issued will provide coverage on a claims-made and reported basis for only those claims that are made against the insured and reported while the policy is in force and that coverage ceases with the termination of the policy. All claims will be excluded that result from any acts, circumstances or situations known prior to the inception of coverage being applied for, that could reasonably be expected to result in a claim.

I, undersigned individual, on behalf of the Named Insured, warrant and represent that the statements set forth in this application are complete and accurate and that there has been no attempt at suppression or misstatement of any material facts known or which should be known and agree that this application and any supplements executed in support of this application shall become the basis of any coverage to be issued by Westport Insurance Corporation.

\*            \*            \*

I, undersigned individual, on behalf of the Named Insured, understand and agree that the Named Insured is obligated to report any changes in the information provided in this application which occur after the date of the application.

## V.    THE UNDERLYING LAWSUITS

### The Wu Lawsuit

44.    On December 30, 2016, Bing Wu ("Wu") filed a seven-count complaint against Jerry Ma ("Ma"), Thomassen, as an individual, M. Thomassen &

Associates, P.C., Clear Currents West LP ("Clear Currents West"), Clear Currents West Management, LLC, PDC Capital Group ("PDC"), LLC, Clear Currents, Inc., and Clear Currents West, LLC in the Superior Court of California, Orange County, Case Number 30-2016-00895066 ("the *Wu* Lawsuit"), a true and correct copy of which is attached hereto as Exhibit "C" and incorporated herein by this reference.

45.    The *Wu* Lawsuit alleges that Ma held himself out as someone who could assist Wu in obtaining citizenship in the USA.  The *Wu* Lawsuit further alleges that Ma recommended that Wu invest in a company in the USA and proceed with his path to citizenship by obtaining an I-526 application and an EB-5 Visa.

46.    The *Wu* Lawsuit claims that Ma advised Wu that he located a suitable investment in the USA and that Wu should use Thomassen as his legal counsel for the I-526 application.

47.    Wu alleges that pursuant to agreements prepared by Thomassen and other defendants, and pursuant to Ma's and Thomassen's instructions, he provided Thomassen with $500,000 to be used as a capital investment in Clear Currents West as well as an additional  $45,000 transaction fee.  Wu claims that Thomassen also acted as the "escrow" agent for the transaction.

48.    Wu alleges that in February 2016, the USCIS requested additional information regarding Wu's capital investment, as identified in his I-526 application.  According to the *Wu* Lawsuit, Thomassen claims she attempted to communicate with Clear Currents West, but was unable to obtain any information, despite that she shared an office with the company.

49.    The *Wu* Lawsuit alleges that on June 10, 2016, the USCIS denied Wu's I-526 application because the structure of his transaction with Clear Currents West was a loan rather an actual investment.  Wu claims that Thomassen then abandoned him and did nothing to seek a refund of his money.

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

50.     Wu claims that after he demanded the return of his capital investment, he received a letter from a person representing that he was an attorney for PDC, who asserted that Clear Currents West had loaned Wu's money to another one of the defendants, and indicated that PDC would sue certain entities to recoup monies loaned.

51.     Wu claims that defendants in his lawsuit collectively created a shell game, transferring Wu's money from one entity to another and having the final entity appear as a ghost.  Wu claims there is unity of ownership among the corporate defendants named in his lawsuit and a failure to observe proper corporate formality that makes each of the corporate defendants the alter ego of each other. Additionally, Wu asserts Thomassen and Ma were in complete complicity with the fraud committed by the corporate defendants.

52.     Wu's First Cause of Action is for Fraud and Conspiracy to Commit Fraud against all defendants named therein.  Wu alleges that the defendants collectively engaged in a scheme to defraud him, with each party acting in conspiracy with the others.

53.     The Second Cause of Action is for Money Had and Received against all defendants.  Wu claims that between January and April 2014, he deposited with Thomassen, who was acting as the escrow for the transaction, the sum of $545,000. Wu claims that if he did not obtain the EB-5, he was to receive the return of his $545,000.

54.     The Fourth Cause of Action is for Breach of Fiduciary Duties against Thomassen and Ma.  Wu claims that Thomassen owed a fiduciary duty to him as both his lawyer and the escrow officer handling his money for the transaction.  Wu asserts that Thomassen breached the fiduciary duty owed to him by misrepresenting the nature of the work being performed and holding her personal interest above Wu's in extracting $545,000 without any consideration.

{00146518.DOCX}

55.     The Fifth Cause of Action is for Legal Malpractice against Thomassen.  It is alleged that Thomassen agreed to represent Wu in his I-526 application and to perform at the standard of care expected of all lawyers offering such services. Wu alleges that Thomassen was acting in concert with the other defendants to take Wu's money without providing any value.

56.     The Sixth Cause of Action is for Unjust Enrichment against all defendants.  It alleges that defendants have been unjustly enriched by Wu's payment of $545,000 in exchange for no consideration or anything of value.  Wu seeks to "disgorge" the $545,000 from the defendants.

57.     The Seventh Cause of Action is for Conversion against all defendants. It asserts that defendants have unlawfully refused to return Wu's property.

### *The Jian Lawsuit*

58.     On November 27, 2017, twenty-one claimants ("the *Jian* Claimants") filed a twelve-count complaint for damages against Thomassen, individually, Emilio Francisco, PDC Capitol Group, LLC, Café Primo International, Inc., Dennis Shen, and does 1 – 50, case number 30-2017-00957912 (the "*Jian* Lawsuit"), a true and correct copy of which is attached hereto as Exhibit "D" and incorporated herein by this reference.

59.     The *Jian* Lawsuit alleges that Thomassen, along with Francisco, formed PDC, a Regional Center for developing a Targeted Employment area within the meaning of the EB-5 Program, to complete real estate transactions and develop properties for Café Primo restaurants ("the Offerings").

60.     The *Jian* Lawsuit alleges that from at least January 2013 through at least September 2016, defendants raised approximately $72.6 million from at least 135 investors through the Offerings.  Of that amount, approximately $66.84 million consisted of capital contributions and $5.797 million consisted of administrative fees.

61.    The *Jian* Lawsuit alleges that defendants solicited investments of $500,000 from investors on the premise that the investment would be used in Targeted Employment Areas and be consistent with the EB-5 Program.  The *Jian* Lawsuit alleges that only the administrative fee collected would be available to pay expenses until the Offering was complete.

62.    The *Jian* Lawsuit contends that based on defendants' representations, the *Jian* Claimants signed various contracts involving the EB-5 Program, which included making capital investments of $500,000 to defendants plus an administrative fee of $45,000 and an escrow management fee of $250.

63.    The *Jian* Lawsuit alleges, though, that defendants moved investors' funds, including those of the *Jian* Claimants, among various projects, commingled funds, and did not use the invested funds for the specific projects, per the representations made to them.   Funds were also allegedly misappropriated for defendants' own use, contrary to the defendants'  previous representations.

64.    The First Cause of Action is for Intentional Misrepresentation as to all defendants.  The *Jian* Lawsuit alleges that defendants' representations about the Offerings, use of investor funds and the EB-5 Program were false and made with knowledge that they were false or were made with a reckless disregard for the truth, and were reasonably relied upon by  the *Jian* Claimants.  The *Jian* Lawsuit further alleges that defendants shared the $500,000 investment, $45,000 administrative fee, and $250 escrow fee paid by each of the plaintiffs, which resulted in the *Jian* Claimants experiencing serious and dire financial consequences and emotional distress.

65.    The Second Cause of Action is for Negligent Misrepresentation against all defendants.

66.    The Third Cause of Action is for Fraudulent Concealment against all defendants.  The *Jian* Lawsuit alleges that defendants failed to disclose important facts to them, including that their $500,000 capital investment would not be

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

invested in the specific designated project, but rather commingled with other investor funds and diverted for use by other companies.

67.     The Fourth Cause of Action is for Breach of Implied Covenant of Good Faith and Fair Dealing against all defendants.

68.     The Fifth Cause of Action is for Breach of Fiduciary Duty against all defendants.

69.     The Sixth Cause of Action is for Conversion against all defendants. The *Jian* Lawsuit alleges that the *Jian* Claimants demanded that each defendant return their $500,000 capital investment, $45,000 administrative fee, and $250 escrow fee, but defendants unlawfully retained the monies.

70.     The Seventh Cause of Action is for Intentional Infliction of Emotional Distress against all defendants.

71.     The Eighth Cause of Action is for Negligent Infliction of Emotional Distress against all defendants.

72.     The Ninth Cause of Action is for Breach of Written Agreements against all defendants.  The *Jian* Lawsuit alleges that the defendants breached the agreements by failing to provide services in connection with the I-526 Immigrant Petitions, and that the defendants diverted funds to other projects and misappropriated amounts for their own use.

73.     The Tenth Cause of Action is for Professional Negligence against Thomassen and Francisco.

74.     The Eleventh Cause of Action is for Unjust Enrichment against all defendants.  The *Jian* Lawsuit alleges that by failing to return the *Jian* Claimants' monies, which was rightfully owed to them, defendants created an unjust retention of a benefit at the *Jian* Claimants' expense.

75.     The Twelfth Cause of Action is for Money Had and Received against all defendants.  The *Jian* Lawsuit alleges that defendants have become indebted to each claimant in failing to return their monies.

## VI.  **THE POLICIES**

76.   The Policies[2] contain the following Insuring Agreement language:

## I.   **INSURING AGREEMENTS**

A.   The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any alleged WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

B.   If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

＊              ＊              ＊

---

[2] True and correct copies of the 2016 and 2017 Policies are attached hereto as Exhibits "E" and "F," respectively, and incorporated herein by this reference.

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

77.    The Policies contain the following definitions, among others:

**III.    DEFINITIONS**

As respects such insurance as is afforded by this POLICY, the following definitions shall apply:

             *           *           *

**C.    "CLAIM" MEANS:**

    1.    a demand made upon any INSURED for LOSS, including, but not limited to, service of suit, or institution of arbitration proceedings or administrative proceedings against any INSURED; or

    2.    a request for any INSURED to toll or waive a statute of limitations.

             *           *           *

**J.    "INSURED" MEANS:**

    1.    the NAMED INSURED;

    2.    any lawyer who is a past or present partner, officer, director, stockholder, shareholder, employee or "of counsel" of the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED;

    3.    any lawyer listed in the application who is a partner, officer, director, stockholder, shareholder or employee of the NAMED INSURED at the time the CLAIM is made, but only for PROFESSIONAL SERVICES rendered by such individual while associated with a PRIOR FIRM;

    4.    any lawyer who has retired from the NAMED INSURED,

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

but only for PROFESSIONAL SERVICES rendered prior to the date of retirement;

5.    any past or present non-lawyer, employee or independent contractor attorney of the NAMED INSURED, but only for PROFESSIONAL SERVICES rendered on behalf of the NAMED INSURED; and

6.    the heirs, executors, administrators and legal representatives of any INSURED, but only in their capacity as such in the event of any INSURED'S death, incapacity or bankruptcy, and only for CLAIMS based on PROFESSIONAL SERVICES rendered prior to such INSURED'S death, incapacity or bankruptcy, and only to the extent that such INSURED would otherwise be covered by this POLICY; and

K.    **"LOSS" MEANS** the monetary and compensatory portion of any judgment, award or settlement, provided always that LOSS shall not include:

1.    civil or criminal fines, penalties, fees or sanctions;

2.     matters deemed uninsurable by operation of law;

3.    punitive or exemplary damages;

4.    the multiplied portion of any multiple damages;

5.    the return by any INSURED of any fees or remuneration paid to any INSURED; or

6.    any form of non-monetary relief.

{00146518.DOCX}

L.    **"NAMED INSURED" MEANS** the person or entity listed in the Declarations and PREDECESSOR FIRM thereof.

78.    The Policies contain the following exclusions, among others:

## IV.    EXCLUSIONS

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

\*                    \*                    \*

B.    any WRONGFUL ACT occurring prior to the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED if, (a) the WRONGFUL ACT had previously been reported to any other insurance company or (b) if the INSURED at the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.

\*                    \*                    \*

H.    any intentionally criminal, dishonest, malicious, or fraudulent:

1.    act, error, omission; or

2.    PERSONAL INJURY committed by an INSURED.

This exclusion applies to any INSURED who is adjudged or admits to have committed such acts. This exclusion does not apply to any INSURED who did not commit, know or acquiesce

in  such WRONGFUL ACT which is the basis of the claim.

I.    any  INSURED'S activities as an  officer,  director, partner, manager or  employee of  any company, corporation, operation, organization, partnership or association other  than the NAMED INSURED or PRIOR FIRM, unless indicated as an additional INSURED  or unless the  activities are deemed to be the rendition of PROFESSIONAL SERVICES in the INSURED's capacity as a lawyer.

J.    any conversion, misappropriation or  improper  commingling of client funds.   This  exclusion applies only to any INSURED who is adjudged or admits to have committed such acts.

N.    any  INSURED having gained in  fact any personal profit or advantage  to which he  or she was  not legally entitled.

O.    the disbursement of funds:
        1.    as the result of the deposit of a counterfeit check, or
        2.    without written verification from the issuing bank that the funds are valid and available, or
        3.    as the result of a fraudulent scheme conducted by a non-insured.
                *                    *                    *

79.    The Policies contain the following Condition G:

G.    **MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS**

        The  inclusion  of more  than  one  INSURED  in  any CLAIM  or  the making  of  CLAIMS  by more than one person or organization  shall

not increase the limits of liability or the deductible. Two or more CLAIMS arising out of a single WRONGFUL ACT or a series of related or continuing WRONGFUL ACTS, shall be a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM was first made arising out of such WRONGFUL ACT and all such CLAIMS are subject to one "Per Claim Limit of Liability" and deductible.

## **FIRST CLAIM FOR RELIEF**

### **[For Rescission of the Policies]**

80.    Westport hereby incorporates and re-alleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

81.    LOMT and Thomassen concealed or otherwise provided false information in the Application and 2017 Warranty Statement in several ways.

82.    First, the Application denied that any claims, suits, or demands had been made during the previous five years against the applicant, its predecessor firm, or any lawyer proposed for insurance. That representation was false as Thomassen, Marilyn Thomassen and Associates, P.C., Law Offices of Marilyn Thomassen, and Thomassen Law Group were all sued in an adversary proceeding in the United States Bankruptcy Court for the District of New Jersey in December 2012. *See Lubetsky v. Thomassen*, Case No. 12-30829; Adv. No. 12-1861.

83.    In 2013, Thomassen was also sued for a Telephone Consumer Protection Act violation in the United States District for the Central District of California. *See Span v. Thomassen*, Case No. CV-13-1678.

84.    Second, Thomassen and LOMT denied knowledge of any fact or circumstance, act, error, omission or personal injury, which might be expected to be the basis of a claim or suit for professional liability insurance.

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

85.     In April 2016, weeks before she completed the Application, Thomassen was served with a subpoena by the SEC related to its investigation of PDC,  Given Thomassen's and LOMT's relationship with Emilio Francisco, PDC's CEO, and the work she performed involving the EB-5 program, the subpoena provided Thomassen with notice of  a fact or circumstance, act, error, omission or personal injury, which might be expected to be the basis of a claim or suit for professional liability insurance.  The SEC thereafter  brought suit against PDC and Francisco in December 2016, and a receiver was ultimately appointed to act on behalf of PDC.  True and correct copies of the SEC's Complaint and Amended Complaint are attached hereto as Exhibits "G" and "H," respectively, and incorporated herein by this reference.

86.     Additionally, on information and belief, several of the Claimants demanded the return of their funds or otherwise asserted a claim against Thomassen before she and LOMT completed the Application and 2017 Warranty. At the very least, Thomassen  was aware of problems involving the I-526 applications which could reasonably be expected to result in a claim against her and LOMT.

87.     Third, in question 12 of the Application, Thomassen and LOMT identified that there were  less than four firm employees.  SEC exhibits have revealed, however, approximately a dozen staff, including several other attorneys. A true and correct copy of one such exhibit is attached hereto as Exhibit "I" and incorporated herein by this reference.

88.     Fourth, in response to Question 10, Thomassen and LOMT denied acting as a partner or in a managerial role for any other organization.  SEC deposition exhibits, however, recently revealed that Thomassen may have been operating other law firms, including, but not limited to, M. Thomassen and Associates, P.C. and Thomassen Law Group.  See, e.g., SEC Exhibits attached hereto as Exhibit "J" and incorporated herein by this reference.  Furthermore, the

SEC documents also revealed the existence of M. Thomassen Management, Inc., which was formed in August 2015, and which was allegedly involved in the EB-5 offerings. *See, e.g.,* records of the California Secretary of State attached hereto as Exhibit "K" and incorporated herein by this reference.

89. Notably, Thomassen and LOMT sought to substantially increase the liability limits of the 2017 Policy before its inception, which supports that they knew other claims against them were imminent.

90. Had LOMT and Thomassen accurately responded to inquiries set forth in the relevant application materials, and reported the above information, Westport would have either not issued the Policies, would have issued them at a significantly increased premium and/or issued them with different terms, conditions, exclusions and/or limitations.

91. The false/concealed information in the Application and 2017 Warranty Statement was material to Westport issuing the Policies, including the Policies' terms, limits and premium charged.

92. Westport is informed and believes that LOMT disputes Westport's right to rescind the Policies.

93. Westport hereby offers to restore the premiums paid for the Policies, subject to a credit for all sums paid by Westport under the Policies for the benefit of LMOT.

## SECOND CLAIM FOR RELIEF

### [Alternative Pleading - Declaratory Judgment – the Prior Knowledge and Disbursement of Funds Exclusions]

94. Westport hereby incorporates and re-alleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

95. The Policies exclude coverage for any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from "any WRONGFUL ACT occurring prior to the effective date of the POLICY

PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED if, (a) the WRONGFUL ACT had previously been reported to any other insurance company or (b) if the INSURED at the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM."

96.     Based on the allegations of the *Wu* and *Jian* Lawsuits, the alleged scheme was winding down before the inception of the 2016 Policy and, on information and belief, several claimants demanded the return of their monies deposited with Thomassen and/or her firm and/or otherwise asserted a claim against Thomassen and LOMT.

97.     Additionally, Thomassen was also served in April 2016 with a subpoena issued by the SEC involving an investigation into PDC. Based on Thomassen's receipt of the SEC subpoena and role as an escrow agent for Claimants, any reasonable attorney would have understood that a claim was likely to result from the EB-5 Program applications/escrow services.

98.     Thus, coverage for the *Wu* and *Jian* Lawsuits is excluded by the Prior Knowledge Exclusion contained in the Policies.

99.     The Policies also exclude coverage for any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from the disbursement of funds as the result of a fraudulent scheme conducted by a non-insured. The crux of the *Jian* and *Wu* Lawsuits is that the defendants were engaged in a scheme to defraud Claimants, which included Thomassen acting as an escrow, and improperly disbursing Claimants' funds.

100.    Indeed, without the allegations involving wrongful disbursement of Claimants' funds, there would be no claims against Thomassen for wrongdoing.

101.    Thus, coverage for the *Wu* and *Jian* Lawsuits is also excluded by the

1    Disbursement of Funds Exclusion.

2    102.    An actual controversy within the meaning of 28 U.S.C. § 2201 now

3    exists between Westport, Thomassen and LOMT concerning whether the Policies

4    require Westport to defend Thomassen/LOMT for the claims asserted in the *Wu*

5    and *Jian* Lawsuits.  Westport contends, and is informed and believe that

6    defendants deny, that Westport has no obligation to defend or indemnify any

7    person or entity with respect to the claims asserted in the *Wu* and *Jian* Lawsuits

8    because coverage is excluded under one or more or the exclusions cited above.

9    103.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Westport seeks, and is

10   entitled to obtain, a judicial declaration that, under the Policies, there is no duty to

11   defend or indemnify any person or entity, including Thomassen and LOMT, for the

12   claims asserted against them in the *Wu* and *Jian* Lawsuits by virtue of one or more

13   of the exclusions cited above.

14

15   **THIRD CLAIM FOR RELIEF**

16   **[Alternative Pleading - Declaratory Judgment –**

17   **the *Wu* and *Jian* Lawsuits are Related]**

18   104.    Westport hereby incorporates and re-alleges the allegations in

19   paragraphs 1 through 79 as if fully set forth herein.

20   105.    The Policies' Multiple Insureds, Claims, Claimants provision

21   provides, in relevant part, as follows:

22        Two or more CLAIMS arising out of a single WRONGFUL ACT or a

23        series of related or continuing WRONGFUL ACTS, shall be a single

24        CLAIM.  All such CLAIMS whenever made shall be considered first

25        made on the date on which the earliest CLAIM was first made arising

26        out of such WRONGFUL ACT and all such CLAIMS are subject to

27        one "Per Claim Limit of Liability" and deductible.

28

{00146518.DOCX}

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

106.   The California Supreme Court has held that the term "related" in the context of multiple claims is unambiguous and encompasses both logical and causal connections. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 873, (1993).

107.   Both the *Jian* and *Wu* Lawsuits allege that Thomassen and her firm(s) committed WRONGFUL ACTS in the EB-5 Program application process, acting as an escrow agent, and failing to return the Claimants' monies.  Indeed, both actions contain very similar allegations outlining a scheme to defraud Claimants, who were foreign investors pursuing  EB-5 visas.

108.   Thus, the *Jian* and *Wu* Lawsuits arise from an alleged single course of conduct and must be treated as a single claim under the 2016 Policy.

109.   An actual controversy within the meaning of 28 U.S.C. § 2201 now exists between Westport, Thomassen and LOMT in that Westport contends, and is informed and believes that Thomassen and LOMT deny, that the *Wu* and *Jian* Lawsuits constitute a single claim under the 2016 Policy and that there is no potential for coverage under the 2017 Policy.

110.   Pursuant to 28 U.S.C. §§ 2201 and 2202, Westport seeks, and is entitled to obtain, a judicial declaration that, under the Policies, the *Wu* and *Jian* Lawsuits constitute a single claim under the 2016 Policy.

### FOURTH CLAIM FOR RELIEF

### [Alternative Pleading - Declaratory Judgment –

### No Coverage For Non-Insured Firms]

111.   Westport hereby incorporates and re-alleges the allegations in paragraphs 1 through 79 as if fully set forth herein.

112.   Exhibits utilized in the SEC's November 2017 deposition of Thomassen reflect that she operated as Thomassen Law Group, Marilyn Thomassen & Associates PC, and M. Thomassen & Associates PC.

{00146518.DOCX}

COMPLAINT OF WESTPORT INSURANCE CORPORATION FOR RESCISSION AND DECLARATORY RELIEF

113.   Westport issued the Policies to LOMT and no other firm or entity is an Insured under the Policies.  Moreover, the Policies provide insurance for Thomassen for PROFESSIONAL SERVICES on behalf of the NAMED INSURED (LOMT).

114.   The Policies also exclude coverage for "any  INSURED'S activities as an  officer,  director, partner, manager or  employee of  any company, corporation, operation, organization, partnership or association other  than the NAMED INSURED or PRIOR FIRM, unless indicated as an additional INSURED  or unless the  activities are deemed to be the rendition of PROFESSIONAL SERVICES in the INSURED's capacity as a lawyer."

115.   Thus, to the extent that Thomassen did not perform the EB-5 Program work/activity, as alleged in the *Wu* and *Jian* Lawsuits, on behalf of LOMT, there is no potential for coverage for the claims asserted therein under the Policies.

116.   Westport has requested that Thomassen explain her relationship to the various described entities/law firms bearing her name, including their relationship to the NAMED INSURED, LOMT, but no response from Thomassen has been forthcoming. 117.  As such, Westport seeks a declaration that is has no duty to defend or indemnify Thomassen for any conduct engaged in, or any act, error or omission  committed in any capacity other than for LOMT.

117.   An actual controversy within the meaning of 28 U.S.C. § 2201 now exists between Westport, Thomassen and LOMT in that Westport contends, and is informed and believes that Thomassen and LOMT deny, that Westport has no duty to defend or indemnify Thomassen for any conduct engaged in, or any act, error or omission committed in any capacity other than for LOMT.

118.   Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks, and is entitled to obtain, a judicial declaration that, under the Policy, there is no duty to defend or indemnify Thomassen and LOMT for the claims asserted against them in

1  the *Wu* and *Jian* Lawsuits to the extent such claims are based upon conduct

2  committed other than for LOMT.

3

4      WHEREFORE, Westport respectfully requests that this Court enter

5  judgment in its favor and against defendants, and each of them, as follows:

6      A.    For a declaration that the Westport Policies are rescinded and void *ab*

7            *initio* and of no force or effect whatsoever;

8      B.    For an order directing Thomassen and LOMT to reimburse Westport

9            for all sums paid by Westport under the Policies in excess of the

10           premiums charged by Westport for the Policies; C. In the alternative,

11           for a declaration that Westport has no duty to defend or indemnify

12           Thomassen and/or LOMT for the claims asserted in in the *Wu* and

13           *Jian* Lawsuits;

14     D.    In the alternative, for an order directing reimbursement from

15           Thomassen and LOMT of all claims expenses paid to defend them in

16           the *Wu* and *Jian* Lawsuits;

17     E.    For Westport's costs of suit incurred herein; and

18     F.    For such other and further relief that the Court deems just and proper.

19

20  Dated:  January 29, 2018        CHARLSTON, REVICH & WOLLITZ LLP
                                    JEFFREY A. CHARLSTON
21                                  BRUCE T. SMYTH

22

23                                  By *Jeffrey A Charlston*

24                                      Jeffrey A. Charlston
                                        Attorneys for Plaintiff
25                                      Westport Insurance Corporation

26

27

28

{00146518.DOCX}